CREATIVE SOLUTIONS GROUP,
INC.; Form House Holdings,
Inc., Plaintiffs–Appellees,

v.

PENTZER CORPORATION,
Defendant–Appellant.

No. 01–1146.

United States Court of Appeals,
First Circuit.

Heard May 8, 2001.
Decided June 5, 2001.

Lawrence A. Wojcik with whom Sonya D. Naar, Raj N. Shaw, Piper Marbury Rudnick & Wolfe, Edward P. Leibensperger, Marc A. Polk, Nutter, McClennen & Fish, LLP, were on brief for defendant-appellant Pentzer Corporation.

Mark D. Cahill with whom Robert A. Kole and Choate, Hall & Stewart were on brief for plaintiffs-appellees Creative Solutions Group, Inc. and Form House Holdings, Inc.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and SCHWARZER,* Senior District Judge

SCHWARZER, Senior District Judge.

This case presents the question of whether the disputes between the parties are subject to arbitration under their agreement and, to the extent they are, if arbitration has been waived.

The case arises out of an agreement ("the Agreement") by which plaintiffs Creative Solutions Group (through its predecessor, Heritage Fund II Investment Corporation—"Heritage") purchased the capital stock of five companies known as Creative Solutions Group, Inc. from defendant Pentzer Corporation ("Pentzer"). Pentzer and Heritage entered into the Agreement on March 31, 1999, the closing date for the transaction. The stipulated

---

* Of the Northern District of California, sitting by designation.

purchase price, based on December 31, 1998, financial statements, was subject to post-closing adjustments made pursuant to procedures delineated in the Agreement. To that end, the Agreement required Pentzer to deliver to Heritage certain financial information called the Purchase Price Financials, which reflected the position of the companies as of March 31, 1999. Heritage had the right under the Agreement to review related work papers of Deloitte & Touche, Pentzer's auditors. The Agreement provided that "[i]n the event that [Heritage or its accountants] dispute any portion of [Pentzer's] calculation of any of the Purchase Price Financials," notice shall be given to Pentzer and, if the dispute is not resolved, it shall be submitted to arbitration. The Agreement further provided for adjustment of the purchase price to the extent the March 31, 1999, book value or net worth of the five companies being purchased differed from the book value or net worth as of December 31, 1998.

Following the closing, Pentzer delivered the Purchase Price Financials to Heritage on August 5, 1999, and advised that as a result of the Deloitte & Touche audit, Heritage was entitled to an adjustment of the purchase price in addition to the adjustment agreed on at the closing. Heritage then requested access to the Deloitte & Touche work papers pursuant to the terms of the Agreement, but the parties were unable to arrive at mutually satisfactory terms for access and Heritage never received the papers.

Plaintiffs filed this action on April 7, 2000, stating causes of action for breach of certain representations and warranties in the Agreement, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and violation of Massachusetts General Laws Chapter 93A (1997) ("Regulation of Business Prac-

tices for Consumers Protection"). In support of these causes of action, plaintiffs alleged three breaches of the Agreement by Pentzer: (1) overstatement of the companies' 1998 earnings before interest, taxes, depreciation and amortization (the EBITDA claim); (2) overstatement of the companies' net worth as of March 31, 1999 (the NWO claim); and (3) failure of two companies to comply with OSHA (29 U.S.C. §§ 651–678) standards. The last claim is not an issue in this appeal.

Pentzer waived formal service of the complaint and at the end of the sixty-day period obtained an extension to plead to July 6, 2000, when it moved to dismiss four of the six counts of the complaint. Plaintiffs served partial initial disclosures on July 25, 2000. Because damage computations were not included, Pentzer made a request for them. On August 11, 2000, plaintiffs served document requests on Pentzer. On September 7, 2000, Pentzer invoked the dispute resolution procedure under the Agreement, including a demand for arbitration. Plaintiffs did not respond and Pentzer, on September 11, 2000, moved to compel arbitration.

On November 13, 2000, the district court ruled on the motion. It held that plaintiffs' claims were not based on mistakes of accounting in the Purchase Price Financials, but on the overall course of the negotiations leading up to the Agreement. Accordingly, the dispute was not one over the calculation of any of the Purchase Price Financials subject to the arbitration clause, but over Pentzer's representations and warranties concerning the financial strength of the companies. Because the court concluded "that the majority of the plaintiffs' claims relate not to the Purchase Price Financials," it denied the motion.

Pentzer moved for reconsideration. On January 5, 2001, the court reaffirmed its prior order. The court specifically ad-

dressed the NWO claim, which expressly concerns calculation of the final purchase price derived from the Purchase Price Financials. While the court found this claim to be governed by the arbitration agreement, it held that Pentzer had waived its right to arbitrate. It found that plaintiffs had been prejudiced by Pentzer and Deloitte & Touche's failure to turn over accounting records and work papers, forcing plaintiffs to seek to compel production, investigate the suspected fraud, and commence the litigation, incurring legal expenses along the way. Pentzer had also caused plaintiffs to incur legal expense by making discovery requests and refusing to return settlement documents to plaintiffs. Given the narrow scope of this arbitration agreement, the court found that it would be inefficient to require plaintiffs to arbitrate the NWO claim while simultaneously or subsequently litigating the far more substantial EBITDA and OSHA claims. The court denied the motion and denied a stay pending appeal.

The district court had jurisdiction of the action under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1292 and under the Federal Arbitration Act, 9 U.S.C. § G16.

## I. WHICH CLAIMS ARE SUBJECT TO ARBITRATION?

■ Arbitration is "simply a matter of contract between the parties; it is a way to resolve the disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Coady v. Ashcraft & Gerel,* 223 F.3d 1, 10 (1st Cir.2000) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct.

1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

■ We agree with the district court that the EBITDA claim of misrepresentation in the companies' December 31, 1998, financial statement is not a claim the parties agreed to submit to arbitration. Article 2.6 of the Agreement represents that those statements "fairly present[ ] the financial condition and results of operation of the [companies]." Article 10.1 provides that Pentzer shall indemnify, defend, and hold plaintiffs harmless from any loss arising from a breach by Pentzer of any representation or warranty. And Article 10.7 states that "[t]he provisions of this Article 10 shall be the sole and exclusive remedy . . . for all claims of breach . . . pursuant to this Agreement. . . ." Thus, not only does the exclusive remedy provision govern the EBITDA claim relating to the December 31, 1998, statements, but the arbitration agreement, by its terms, also excludes them. Article 1.6, the arbitration provision, deals with "Calculation of Final Closing Date Purchase Price." It concerns only "dispute[s] [over] any portion of [Pentzer's] calculation of any of the Purchase Price Financials." The Purchase Price Financials, in turn, consist of the financial statements of the companies as of the closing date (March 31, 1999, also the valuation date) with supporting calculations.

Pentzer argues that the EBITDA claim is a dispute over the Purchase Price Financials, because the factual allegations underlying plaintiffs' complaint could be resolved by an independent arbitrator reviewing the Purchase Price Financials. It is true, as Pentzer argues, that the closing date financial statements would reflect the historical financial record of the companies. However, it does not follow that if

the closing date statements correctly reflect the results of operations as of March 31, 1999, those financial statements for the preceding periods were also correct. In other words, it would be fallacious to say that if there were no inventory overstatements as of March 31, 1999, none resided in the December 31, 1998, or earlier statements.

■ Plaintiffs' claim of net worth overstatement in the March 31, 1999, financial statements, on the other hand, falls squarely within the arbitration provision's scope. While a portion of the NWO claim may reflect the EBITDA shortfall during the prior periods, some $800,000 allegedly is attributable to insufficient net worth adjustments in the Purchase Price Financials. We agree with the district court that the NWO claim in the complaint is subject to arbitration. The only question that remains is whether Pentzer waived its right to send the NWO claim to arbitration.

## II.   WAS ARBITRATION WAIVED?

■ In considering whether a party has waived its arbitration right, courts are consistently mindful of the strong federal policy favoring arbitration. The Supreme Court has stated that any doubt concerning arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "Waiver is not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day." *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 293 (1st Cir.1986) (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir.1985)),

*abrogated on other grounds, Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). "[W]e have repeatedly held that a party may, by engaging in litigation, implicitly waive its contractual right to arbitrate." *Navieros Inter–Americanos v. M/V VASILIA EXPRESS*, 120 F.3d 304, 316 (1st Cir.1997). But in order for plaintiffs to prevail on "their claim of waiver, they must show prejudice." *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 221 (1st Cir.1995) (quoting *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 18 (1st Cir.1986)). This Circuit has laid down a set of factors to guide the determination of whether a waiver has occurred:

> In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking the stay or whether the enforcement of arbitration was brought up when trial was near at hand....

> Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration ...) had taken place, ... and whether the other party was affected, misled, or prejudiced by the delay....

*Jones Motor Co., Inc. v. Chauffeurs, Teamsters, and Helpers Local Union No. 633*, 671 F.2d 38, 44 (1st Cir.1982) (quoting *Reid Burton Constr. Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir. 1980)). Review of a district court's determination of waiver of arbitration is plenary. *Navieros Inter–Americanos*, 120 F.3d at 316.

■ Pentzer filed its motion to compel arbitration on September 11, 2000, two months after it was required to plead to the complaint (and five months after plaintiffs filed the action). In pleading to the complaint, Pentzer moved to dismiss, an appropriate responsive pleading. It initiated no formal discovery; in response to plaintiffs' voluntary initial disclosure, it requested (but apparently did not receive) the damage calculations omitted from the disclosure. *See* Fed.R.Civ.P. 26(a)(1)(C). No other activity had occurred in the lawsuit other than plaintiffs' filing of a request for production. It could hardly be said that "the litigation machinery ha[d] been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated," *Jones Motor Co., Inc.*, 671 F.2d at 44, or that Pentzer had taken other steps inconsistent with its right to arbitration. *See Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995) (holding that removal to federal court, filing motion to dismiss and to stay discovery and answer to complaint including compulsory counterclaim, and exchanging Rule 26 discovery did not substantially invoke judicial process).

■ In its January 5, 2001, order, the district court found, however, that plaintiffs had shown prejudice. It relied principally on the failure of Deloitte & Touche to turn over on plaintiffs' request the accounting records and work papers as required by Article 1.6 of the Agreement.

"Instead of a timely arbitration," the court found, plaintiffs were forced to incur legal expense to compel production of the records and work papers and commence this litigation. While it appears that Deloitte-and, by extension, Pentzer-did not comply with their obligation under the Agreement, there is no basis whatever for inferring that as a result plaintiffs were forced into litigation instead of going to arbitration. Plaintiffs have never made such an argument, and the district court itself appropriately rejected the argument that the failure to turn over these documents was sufficient to support a finding of waiver, their production not being a condition precedent to the arbitration agreement. There does not appear to be any logical connection between the failure to produce these documents and Pentzer's right to arbitration. Moreover, the legal expense to compel their production would have been incurred in any event because plaintiffs presumably would need them to support their NWO claim regardless of whether this claim is arbitrated or litigated. Prejudice is relevant to waiver when it is the product of a defendant's failure to timely invoke the arbitration procedure. If there was prejudice here, it was not because of a failure timely to request arbitration. *Cf. Navieros Inter–Americanos*, 120 F.3d at 316.

■ Similarly unpersuasive is the district court's finding waiver because of the legal expense incurred by plaintiffs in responding to Pentzer's discovery request and litigating Pentzer's refusal to return settlement documents. As noted above, Pentzer did not invoke formal discovery and only requested plaintiffs to complete the initial disclosure they had voluntarily initiated by providing damage calculations. As for the failure to return the settlement documents, plaintiffs have offered no argument in this court that the legal expense of

**34**

compelling their return resulted in prejudice supporting a finding of waiver and we are unable to discern any basis for one.

### CONCLUSION

For the reasons stated, we AFFIRM the district court's order insofar as it found the EBITDA claim not to be arbitrable and VACATE the order insofar as it denied the motion to compel arbitration of plaintiffs' NWO claim and we REMAND for further proceedings consistent with this opinion. We leave it to the district court's discretion whether to stay the litigation pending arbitration of the NWO claim but we assume the court will defer entry of judgment until all claims have been resolved.

*It is so ordered.*