IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2002 Session

# J.C. BRADFORD & CO., LLC, ET AL. v. DOUGLAS O. KITCHEN

**Appeal from the Chancery Court for Davidson County**
**No. 01-3446-III     Ellen Hobbs Lyle, Chancellor**

---

### No. M2002-00576-COA-R3-CV - May 14, 2003

---

The principal issue in this case is whether the defendant, a member or partner of J.C. Bradford, Inc., waived his right to the arbitration of his claim for damages against the defendants allegedly resulting from various machinations involving fraud and deceit and the violation of Federal and State Securities Laws, by joining a plaintiff class in an action for damages in the U.S. District Court which was voluntarily dismissed after pending four months. The Chancellor held that the defendant filed the District Court action with full knowledge of the facts and thus made an election of remedies, thereby waiving his right of arbitration. We disagree, and reverse the judgment granting an injunction against arbitration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

WILLIAM B. CAIN, J., PATRICIA J. COTTRELL, J., and JOHN A. TURNBULL, SP. J.

John A. Day and Todd McKee, Brentwood, Tennessee and A. Lee Parks and David C. Ates, Atlanta, Georgia, for the appellant, Douglas Kitchen.

William L. Harbison and L. Webb Campbell, II, Nashville, Tennessee and Robert J. Kriss and Bennett E. Kaplan, Chicago, Illinois, attorneys for appellee, J. C. Bradford & Co., LLC.

Robert J. Walker and John C. Hayworth, Nashville, Tennessee, attorneys for appellee, Jeffrey E. Powell.

James F. Sanders and Thomas H. Dundon, Nashville, Tennessee, attorneys for appellee, James C. Bradford, Jr.

# OPINION

## Background

This action was filed by the brokerage firm of J.C. Bradford & Co., LLC[1] [LLC] and two former members of its executive committee seeking to enjoin an arbitration proceeding filed against the plaintiffs by the defendant, a former general partner and manager of the Futures Department of the firm, before the National Futures Association [NFA].

Mr. Kitchen managed the Futures Department of the brokerage firm for eighteen years. He was a general partner and one of seventeen members of the LLC, and owned sixteen "points of interest" therein. He alleged that on September 10, 1999 Jeffrey E. Powell, a management member of the LLC, issued a memorandum that management had determined that the Futures Department would be discontinued as of October 15, 1999 and Mr. Kitchen's employment would cease. The LLC retained his paid in capital and Mr. Kitchen retained his sixteen points of interest, the value of which had not then been determined.

On January 1, 2000 the LLC created a retired partner program which provided that the Executive Committee could offer to any current or withdrawn member, whose capital account remained on deposit with the LLC, the option of participation in the program, whereby a member who accepted the offer to participate would receive one retired partner point of interest for each four points of interest owned by the partner before withdrawal. The program was described as a way for retiring partners to "leave their capital in the firm, get a good return, and possibly participate if the firm were to go public or be sold at a premium." This representation was made by the plaintiffs who, in writing, advised Mr. Kitchen that he "should not conclude that J.C. Bradford & Co. is either going public or is selling out." Mr. Kitchen accepted the program, with the result that he forfeited twelve of his points of interest, which, as it developed, resulted in a loss to him of $2,100,000.00.

Mr. Kitchen alleges that before the retired partner program was created, the plaintiffs had begun negotiations to sell the firm, and that the decision to close the Futures Department was a part of a plan to create a reservoir of unallocated points of interest, so that, when the firm was sold, the individual plaintiffs appropriated the unallocated twelve points thereby enriching themselves, all of which was unknown to Mr. Kitchen. Other acts of alleged self-dealing and fraudulent conduct by the principal managing partners are alleged but need not be described here.

On April 26, 2001 a number of former members of J.C. Bradford, including Mr. Kitchen, filed suit in the United States District Court for the Middle District of Tennessee styled *Davenport, et al v. J.C. Bradford & Co., LLC, et al*, Civil Action No. 3:01-0364 (the "Davenport" action). This

---

[1] We have determined that any explication of the corporate nature of J.C. Bradford Inc. and its ownership structure, described as "points of interests", non-essential to a resolution of this litigation. The method of its acquisition by the PaineWebber Group, Inc., though not the acquisition itself, is immaterial.

lawsuit concerned claims that the alleged self-dealing of Powell and Graves ultimately diluted the amount of money that each member received for his or her points of interest upon the sale of the LLC. The *Davenport* litigation did not include Mr. Kitchen's claims concerning the closing of the Futures Department to force him from employment, nor did it include Mr. Kitchen's claim that he was induced to accept the Retired Partner program and give up 75% of his ownership points so that Powell and Graves could secretly increase the amount of ownership points they each held. The closing of the Futures Department and the retired partner program were not mentioned in the *Davenport* complaint or amended complaint.

After the *Davenport* complaint was filed, the parties engaged in an initial case management conference. The result of the case management conference was a scheduling order whereby the plaintiffs would amend their complaint. On July 12, 2001 the *Davenport* plaintiffs filed their first amended complaint. Thereafter, on July 30, 2001 the defendants in the *Davenport* action filed motions to dismiss the first amended *Davenport* complaint for failure to state a Federal cause of action and failure to comply with the procedural requirements of the Private Securities Litigation Reform Act of 1995. As a result, no discovery was ever even begun in the *Davenport* litigation. The only actions which were taken in the *Davenport* litigation were the filing of a complaint, an amended complaint, and a motion to dismiss.

On August 16, 2001 Mr. Kitchen filed a statement of claim with the NFA to initiate arbitration proceedings, which alleged more grievances or claims than were asserted in the *Davenport* lawsuit. He voluntarily dismissed himself from the *Davenport* action.[2]

In an effort to avoid arbitration, the plaintiffs filed this action in Davidson Chancery seeking to enjoin the arbitration on the asserted grounds that Mr. Kitchen had effectively waived the right to arbitrate because he joined in the *Davenport* lawsuit. The Chancellor agreed and issued the requested injunction. For the reasons following, we reverse and dissolve the injunction, and remand the case to the Chancery Court for whatever purposes may be required.

Analysis

To the extent that the issue of waiver involves questions of fact, our review is *de novo* with a presumption that the judgment is correct. Rule 13(d) Tenn. R. Civ. P. We cannot reverse the factual findings unless they are contrary to the preponderance of the evidence, *Randolph v. Randolph*, 937 S.W.2d 815 (Tenn. 1996), but legal conclusions are reviewed *de novo* with no presumption of correctness. *Bell ex rel. Snyder v. Icard*, 986 S.W.2d 550 (Tenn. 1999).

The Federal Arbitration Act [FAA], 9 USCA 2 et seq., controls, and Tennessee courts are required to apply the FAA to contracts involving interstate commerce and which provide for arbitration. *Tenn. River Pulp & Paper Co. v. Eichleay Corp.*, 637 S.W.2d 853, 858 (Tenn. 1982).

---

[2] The *Davenport* litigation has since been voluntarily dismissed by all one hundred five (105) plaintiffs who elected to participate in a separately filed class action suit in the Circuit Court.

The contract in this case arises out of the registration of the individual plaintiffs and the defendant with the NFA, which authorizes its members to resolve disputes by arbitration within the NFA. Although federal law controls, the FAA does not preempt state courts from determining whether arbitration should be stayed. *Volt v. Infosciences, Inc. v. Brd. of Trustees*, 459 U.S. 486 (1989).

The trial judge concluded that the essential question in determining the issue of waiver is "whether under all of the circumstances the defaulting party had acted inconsistently with the arbitration right," citing *Southern Systems Inc. v. Torrid Ltd*, 105 F.Supp.2d 848 (W.D. Tenn. 2000). The Court in *Southern Systems* recognized that the party alleging waiver should demonstrate that it has been prejudiced, but that the absence of prejudice is not fatal to a determination that a waiver occurred.

We hold that a determination of waiver in arbitration cases controlled by federal law necessarily implicates prejudice to the party opposing arbitration; otherwise the issue evolves into a simple, mechanistic election of remedies inimical to the entire process. The appellant argues that the record reveals no prejudice to the plaintiffs whatsoever, and we agree. The appellees argue that the Sixth Circuit has adhered to the principle that a determination of waiver requires a finding only that the defaulting party has acted inconsistently with the right to arbitrate, the issue of prejudice aside. *See, Germany v. River Terminal Ry. Co.*, 477 F.2d 546 (6th Cir. 1973). But we think the recent case of *General Star Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434 (6th Cir. 2002), decided after the trial court's ruling herein, clarifies the issue.

*General Star* filed suit against a Romanian state-owned insurance company asserting claims for breach of contract and unjust enrichment. The defendant did not respond to the complaint and a default judgment was entered. Nearly one year later the defendant moved to vacate the judgment; the motion was denied. The defendant argued that its liability could be resolved only through the arbitration process pursuant to the applicable contracts. The Sixth Circuit, in an opinion by Judge Gilman, held:

> But "an agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon." *Germany v. River Terminal Ry. Co.*, 477 F.2d 546 (6th Cir. 1973) (per curiam). Although a waiver of the right to arbitration is "not to be lightly inferred," *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation marks omitted), a party may waive the right by delaying its assertion to such an extent that the opposing party **incurs actual prejudice**. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) (recognizing that a party waives the right to arbitrate where it delays the invocation of that right to the extent that the opposing party incurs "unnecessary delay or expense") (internal quotation marks omitted).

In the present case, Astra did not assert its purported right to arbitrate until it filed its motion to vacate the default judgment on March 16, 2000. General Star gave Astra actual notice of the lawsuit on October 16, 1998. Thus, for 17 months, Astra remained idle while General Star incurred the costs associated with this action. Astra, moreover, sought arbitration only *after* the district court had entered a default judgment against it. Under these circumstances, we believe that Astra has waived its right to arbitrate. *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (concluding that the defendant waived its right to arbitrate where it "chose not to invoke arbitration from July 1992 until October 1993 and [the plaintiff] bore the costs of proceeding to try to obtain the sums it thought owed"); *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam) (holding that the defendant waived its right to arbitrate where it delayed its assertion of that right for 20 months). (Emphasis added).

In the case at Bar, Mr. Kitchen, with one hundred five (105) other claimants-partners of the brokerage firm filed an action for damages in the U.S. District Court from which he voluntarily withdrew four months later after initiating arbitration proceedings before the NFA. The brokerage firm filed no answer; no discovery procedures were taken; at a scheduling conference before the Magistrate the defendants gave oral notice of their intention to file a motion to dismiss which generated the filing of an amended complaint. The plaintiffs herein understandably do not seriously argue that they were prejudiced by these actions. There is nothing indicative of waiver in these actions other than the mere joining as a plaintiff class member in the filing of the complaint for damages, which the Chancellor found amounted to a waiver, i.e. an election of remedies, since Mr. Kitchen made a conscious choice to join the federal action.

In the absence of legal constraints a party clearly cannot be compelled to arbitrate because the courts must be open to whomsoever. But it is also clear from the reported cases that in determining whether a party has waived an arbitration right, a foremost principle for consideration is the strong federal policy favoring arbitration. *Creative Solutions Group Inc. v. pPentzer Corp.*, 252 F.3d 28 (1st Cir. 2001).[3]

Appellees urge the correctness of the ruling that Mr. Kitchen's filing of the lawsuit is , *ipso facto*, conclusive of the principle that his action was inconsistent with his claimed rights of

---

[3]Most of the federal circuits require a showing of prejudice by the party opposing arbitration. *See, Creative Solutions Group, supra.*, *Leadertex, Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20 (2nd Cir. 1995), *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674 (3rd Cir. 2000), *Maxum Foundations Inc. v. Salus Corp.*, 779 F.2d 924 (4th Cir. 1985), *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir. 1997), *Ritzel Comm. Inc. v. Mid-American Cellular Telephone* Co., 989 F.2d 966, 969 (8th Cir. 1993), *Chappell v. Laboratory Corp. Of America*, 232 F.3d 719 (9th Cir. 2000), *Metz v. Merrill Lynch Pierce Fenner and Smith, Inc.*, 39 F.3d 1482 (10th Cir. 1994), *Morewitz v. West of England*, 62 F.3d 1356 (11th Cir. 1995).

arbitration. Stated differently, that such action was an election of remedies and foreclosed the issue. If the enquiry should end with a finding that a lawsuit was filed, notwithstanding, for instance, that it was withdrawn before service was perfected, the principle urged by appellees would nevertheless control. This is contrary to the majority rule in the United States. We hold that the party in opposition to arbitration is burdened with the responsibility to show such party was prejudiced in some material way by the judicial action. Here, no actual prejudice was shown, and no prejudice resulted.

Finally, the Chancellor determined that Mr. Kitchen's claims are outside the scope of the NFA member Arbitration Rules, thus approving the argument of the appellees that J.C. Bradford did not agree to arbitrate the lawfulness of acts that occurred before it became a member of the NFA. We note that J.C. Bradford & Co., Inc., which was wholly owned by the LLC, was a member of the NFA for many pertinent years although the LLC asserts that it did not become a member of the NFA until November 16, 1999, after most of Mr. Kitchen's claims had occurred. It is necessary to consider the "totality of the circumstances"; the record speaks to a course of conduct which culminated in the sale of the LLC to PaineWebber, and the LLC was a member of the NFA when Mr. Kitchen was allegedly induced to surrender much of his ownership interests for the Retired Partner Program. While the closing of the Futures Department occurred before the LLC became a member of the NFA, many of the acts complained of occurred subsequently to membership in the NFA. This being so, an injunction issued on these grounds was not justified.

The judgment is reversed, the injunction is dissolved and the case is remanded. Costs of this appeal are taxed to the appellees.

PER CURIAM