Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

Nos. 13-1468, 13-1547

RICHARD P. GAMBINO, as he is Administrator, LOCAL 103, I.B.E.W.
HEALTH BENEFIT PLAN; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103,
I.B.E.W.; ELECRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103,
I.B.E.W.; JOINT APPRENTICESHIP AND TRAINING FUND; INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 103 OF BOSTON,
MASSACHUSETTS; LAWRENCE J. BRADLEY, as he is Executive
Secretary-Treasurer, NATIONAL ELECTRICAL BENEFIT FUND,

Plaintiffs, Appellees/Cross-Appellants,

v.

ADA ALFONSO d/b/a ALFONSO ELECTRICAL SERVICES and ALFONSO
ELECTRICAL CO.; OLD GOAT ENTERPRISES, INC.,

Defendants, Appellants/Cross-Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before
Thompson, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Stephen P. Kolberg, with whom Kolberg & Schneider, P.C.
was on brief, for appellants/cross-appellees.
Indira Talwani, with whom Ira Sills, Alexander
Sugerman-Brozan, Kathryn S. Shea, and Segal Roitman LLP were on
brief, for appellees/cross-appellants.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

June 20, 2014

**SOUTER, Associate Justice.** This appeal is from a district court order confirming an arbitration award against an employer who failed to make contributions to benefit funds as required by the governing collective bargaining agreement with a labor union. We affirm.

I.

International Brotherhood of Electrical Workers Local 103 ("Union") is a union of electrical and construction laborers in eastern Massachusetts. Employers who are party to a Collective Bargaining Agreement ("CBA") with the Union must contribute to funds ("Funds") that provide benefits to union members. Ada Alfonso is one of those employers.

The Funds sued Alfonso[1] in federal court, alleging delinquency in making contributions. While that action was pending, the Union invoked the CBA to resolve the same dispute before a joint labor-management arbitration committee ("Committee"). The Committee ordered an award in the Union's favor.

Alfonso filed a motion in court to vacate the arbitration award, to which the Union responded by bringing its own judicial

---

[1] The action was brought against Ada Alfonso, doing business as Alfonso Electrical Services and Alfonso Electrical Company, and against Old Goat Enterprises, Inc., of which Alfonso is the majority owner and president. Alfonso is a signatory to the CBA and Old Goat, while not a signatory, agrees that it is bound by it. The parties agree that the resolution of this case will have identical effect on each defendant. For ease, we refer to the defendants collectively as "Alfonso."

action to confirm it. Thereafter, the actions by the Funds and the Union were consolidated.

The district court initially granted Alfonso's motion to vacate the award, ruling that the Committee was biased because it included several individuals who were also trustees of the Funds. The court's decision rested in part on the fact that the Union had presented no evidence that Alfonso knew in advance about the Committee's membership. Later, however, the district court granted the Union's motion for reconsideration, finding that new evidence demonstrated that, when Alfonso agreed to the CBA arbitration procedure, she had indeed known of the Committee's potential composition. The court thus confirmed the arbitration award in a judgment against Alfonso, who appealed. The Union cross-appealed on an issue we find it unnecessary to reach, as explained in footnote 6, below.

## II.

We review de novo the district court's decision to confirm the arbitration award. Doral Fin. Corp. v. Garcia-Velez, 725 F.3d 27, 31 (1st Cir. 2013). Against that decision, Alfonso argues that (i) the CBA does not permit arbitration of the type of dispute present here; (ii) the Committee's decision was not final and binding; (iii) the Union waived its right to arbitration; and

(iv) she did not consent to a proceeding with biased arbitrators. None of these challenges has merit.[2]

**A.**

Alfonso contends that the following arbitration provisions of the CBA are too narrow to embrace the dispute in this case.

> 1.4 During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed change(s) in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.
>
> 1.5 There shall be a Labor-Management Committee[3] of three (3) representing the Union and three (3) representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter[4] shall select the management representatives.
>
> 1.6 All grievances or questions in dispute shall be adjusted by the duly authorized

---

[2] If we were to vacate the arbitration award, Alfonso argues that she should not have to resubmit her dispute to what in her view would be another biased Committee. Because we affirm the confirmation of the award, we do not reach this argument.

[3] Elsewhere the CBA refers to a "Joint Conference Committee." The parties' use of the terms implies that the Labor-Management Committee and the Joint Conference Committee are one and the same.

[4] "The Chapter" refers to Electrical Contractors Association of Greater Boston, Inc., Boston Chapter, National Electrical Contractors Association ("NECA"). We refer to the Chapter as "NECA."

representatives of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within forty-eight (48) hours, they shall refer the same to the Labor-Management Committee.

1.7 All matters coming before the Labor-Management Committee shall be decided by majority vote. Four (4) members of the Committee, two (2) from each of the parties hereto, shall be a quorum for the transaction of business but each party shall have the right to cast the full vote of its membership and shall be counted as though all were present and voting.

1.8 Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

According to Alfonso, the reference in section 1.4 to disputes over "matters relating to this Agreement" covers only interpretive disagreements about the very terms of the CBA, and does not extend to a collection dispute like this one. She points to a section of the document that imposes the CBA's terms on non-signatories whom employers might oversee, such as subcontractors: "As a remedy for violations of this section, the Labor-Management Committee . . . [is] empowered . . . to require an Employer to . . . pay into the affected . . . funds . . . any delinquent contributions to such funds which have resulted from the violations." Alfonso says that if the CBA's general arbitration provisions were sufficiently broad to embrace all collection disputes there would have been no need to

empower the Committee explicitly to award delinquent contributions to remedy violations "of this section."

Alfonso's argument against imputing redundancy to the CBA is not, however, the only interpretive guide at hand. This case arises under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and in section 301 cases the Supreme Court has directed that, if there is any doubt, an arbitration clause should be interpreted to embrace a particular dispute. See United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960); see also AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) ("[T]here is a presumption of arbitrability . . . ."). Here, we can hardly say that the text of the CBA commands Alfonso's interpretation beyond all doubt. On its face, the phrase "matters relating to this agreement" in section 1.4 can cover disagreements stemming from the contractual relationship of parties to the CBA. And because the CBA is the source of employers' obligations to contribute to the Funds, such disagreements would seem to include contribution disputes.

Thus, both the statutory presumption and the comprehensive language of the arbitration clause itself point to arbitrability in this instance, a conclusion buttressed by the CBA article devoted to the Funds themselves, which warns that consequences will result "[t]o the extent an individual Employer becomes delinquent, as determined by the Joint Conference

-7-

Committee." Accordingly, the specific language Alfonso points to is most harmoniously read, not as defeating arbitrability here but as guaranteeing it elsewhere as a belt-and-suspenders provision, making it clear that even if an employer tries to circumvent its obligations under the CBA through, for example, subcontracting, resultant losses to the Funds are remediable through arbitration. Hence, we think the dispute in this case was arbitrable under the CBA.

**B.**

Alfonso argues that the Committee's award was not fit for enforcement because it was not final and binding, a conclusion she rests on the fact that in referring to Committee decisions, the CBA does not use the phrase "final and binding." Against this silence, she contrasts language from the CBA elsewhere, providing that "[s]hould the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding." And she claims support for her reading in what she sees as the character of the Committee's procedures, being so cursory that they must not have been meant to produce final, binding decisions.

But whether the Committee's award is final and binding turns on whether Committee arbitration "is the parties' chosen instrument for the definitive settlement of grievances under the

[CBA]." Elec. Contractors Ass'n of Greater Bos., Inc. v. Local Union 103, Int'l Bhd. of Elec. Workers, 458 F.2d 590, 592 (1st Cir. 1972) (emphasis omitted) (quoting Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963) (per curiam)). And that choice need not be the product of any magic words. See Riss & Co., 372 U.S. at 519 ("It is not enough that the word 'arbitration' does not appear in the collective bargaining agreement . . . .").

We think that the CBA reveals the parties' intent to use Committee arbitration for the definitive settlement of grievances such as the one here, by words pointing adequately to the finality of a Committee decision. As quoted before, section 1.4, which appears under the heading "Grievances - Disputes," provides that "[a]ll . . . matters [relating to the CBA] must be handled as stated herein." The subsequent sections, also reproduced above, proceed to spell out the grievance hierarchy: disputes are to be resolved in the first instance by representatives of each party, failing which the Committee is to try its hand, followed by the Council if necessary. If we were to accept Alfonso's position, binding arbitration awards could result only when the Committee fails to resolve a matter, necessitating review by the Council; matters that the Committee succeeded in resolving would never reach finality. That would be so absurd that the more likely reading of the "final and binding" language describing the Council's decisions

-9-

does not imply that decisions reached by the other grievance bodies are tentative, but instead stresses the administration hierarchy: the Council is the end of the road. Thus the mere availability of a higher order procedure was not meant to render the process one step down impotent when it produces a decision.

We see nothing to disturb this conclusion in what Alfonso calls the cursory treatment of her case by the Committee. She directs us to no authority, and we have found none, to support her apparent position that grievance procedures must approximate those of the courtroom for them to produce binding results. Again, the touchstone is the parties' intent to use certain processes to resolve disputes, Elec. Contractors Ass'n, 458 F.2d at 592, and Alfonso has provided no indication that she did misunderstand or could have misunderstood the character of the Committee's proceedings when she became party to the CBA.

## c.

Alfonso says that the Union waived its right to arbitrate by first having the dispute litigated in court. Of course, she recognizes that it was the Funds, not the Union, that brought the initial judicial action, so she claims an identity of interest between the two, and argues that individuals who drove the Funds' litigation were also instrumental in the Union's decision to call for arbitration.

-10-

It is true that by engaging in litigation, a party may waive its right to arbitrate. See Creative Solutions Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001). To determine whether waiver has occurred, we consider, among other things, whether a party has actually participated in any preexisting litigation and whether the opposing party has been prejudiced. See id. Doubts are to be resolved against a finding of waiver. See id.

Here, there is a basis for doubt, at the least. The right to arbitrate springs from the CBA, and because the CBA is an agreement between employers and the Union, not the Funds, the Funds lacked any right to call for arbitration. And Alfonso has directed us to no authority, nor have we found any, to support her argument that the Funds' decision to litigate waived the Union's ability to arbitrate.[5] In any event, there is no need for us to explore when, if ever, one party's litigation efforts will waive another party's arbitration rights, since the record before us fails to show any prejudice to Alfonso from the sequential character of the proceedings. Indeed, the Funds seem to have protected Alfonso from the potential prejudice of inconsistent or duplicative obligations by agreeing to be bound by the results of the Union's arbitration proceedings.

---

[5] The sole case she cites, Taylor v. Sturgell, does not address waiver of arbitration rights; instead, it holds that there is no "virtual representation" exception to the general rule against nonparty claim preclusion. 553 U.S. 880, 904 (2008).

## D.

Alfonso claims that the award should be vacated because she did not consent to arbitrators of a sort she characterizes as biased. Under the CBA, the Union and NECA (which represents the employers) each has authority to select three arbitrators for the Committee. In Alfonso's case, two of those selected by the Union and one of the arbitrators selected by NECA were also trustees of the Funds. According to Alfonso, these three arbitrators were biased, as being subject to a statutorily imposed fiduciary duty to act solely in the interest of the Funds' participants and beneficiaries. See Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a)(1).

The parties agree that, although this action arises under the LMRA, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides guidance on the issue of arbitrator neutrality. Under the FAA, an arbitration award may be vacated on the ground of "evident partiality . . . in the arbitrators," 9 U.S.C. § 10(a)(2), understood as requiring "more than just the appearance of possible bias," but less than bias in fact, JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003). It arises where "a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration." Id. (quoting Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 626 (6th Cir. 2002)(internal quotation marks omitted)).

-12-

But parties can agree to have partisan arbitrators. See, e.g., Delta Mine Holding Co. v. AFC Coal Props., Inc., 280 F.3d 815, 821 (8th Cir. 2001) (cited by JCI Commc'ns, 324 F.3d at 51). And once parties have agreed to a method of arbitration, they can demand no more impartiality than the degree inherent in that method. See, e.g., Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg., Inc., 900 F.2d 1392, 1398 (9th Cir. 1990); Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 679 (7th Cir. 1983); Nationwide Mut. Ins. Co. v. First State Ins. Co., 213 F. Supp. 2d 10, 17 (D. Mass. 2002) (all cited by JCI Commc'ns, 324 F.3d at 51).

This law is key. Assuming, without deciding, that the trustees of the Funds on the Committee were subject to evident partiality,[6] the short answer is that Alfonso consented to a process subject to this level of bias. It is true, as Alfonso notes, that the CBA is silent as to the composition of the Committee aside from providing that both the Union and NECA "shall select . . . representatives." Contrary to Alfonso's protest,

_____

[6] The Union would prefer that we not make this assumption. In fact, in what it characterized as "an abundance of caution," the Union cross appealed precisely because it wanted us to vacate the district court's finding of evident partiality, presumably worried about the impact this finding may have on future cases. We decline to take up the issue, however, for its resolution could not alter our disposition of this case, and the district court's finding of evident partiality has no binding precedential effect outside of this litigation. See Am. Elec. Power Co. v. Connecticut, 131 S. Ct. 2527, 2540 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court.").

however, the word "select" does not, standing alone, imply that the representatives selected will be impartial, and although the CBA itself did not give Alfonso notice of the Committee's composition, other things did. The Union's constitution calls for the Union's business manager both to serve as a trustee of the Funds and to perform all duties specified in the Union's bylaws, including sitting as a member on all employer-Union committees. These documents, in other words, guarantee that one of the Union's representatives on the Committee will also be a trustee of the Funds. Alfonso has been a member of the Union since 2000,[7] six years before she became party to the CBA as an employer, and although she contends that she never received copies of the Union's constitution or bylaws, she does not dispute that these documents were available to her.[8]

Similarly, on the management side, since 2006, the year Alfonso became an employer party to the CBA, NECA has appointed the same individual to serve both as a trustee of the Funds and as a representative to the Committee. There is nothing in the record to rebut an affidavit of NECA's executive director saying that Alfonso

[7] As the district court noted, it may seem strange that Alfonso is both a member of the Union and an employer, but the parties do not appear to dispute this point.

[8] The Union's constitution also calls for the Union's president to act as an ex-officio member of all committees, which would include the Labor-Management Committee. And, while no document calls for the Union's president to serve as a trustee of the Funds, he has done so since 1996.

would have had knowledge of these appointments: she was part of NECA's membership committee and, through Old Goat, was a voting NECA member until 2010.

In sum, the record before us reflects that when Alfonso became an employer signatory to the CBA, and so agreed to resolve disputes through Committee arbitration, she had notice that the Committee could, and indeed would, contain some trustees of the Funds. Having agreed to that method for resolving disputes, she can demand no more impartiality than naturally comes with it.[9]

---

[9] At times, Alfonso's bias argument slides into one sounding in a kind of administrative due process. She complains that the arbitration proceeding lasted less than an hour and consisted almost entirely of party argumentation and document submission, as opposed to witness testimony with its accompanying opportunity for cross examination. Similarly, according to Alfonso, the Committee refused to require the Union to produce documents she had subpoenaed and witnesses she had summonsed.

It is true that "[a]rbitration proceedings must meet the minimal requirements of fairness," which include "a hearing on the evidence." Ramirez-De-Arellano v. Am. Airlines, Inc., 133 F.3d 89, 91 (1st Cir. 1997) (internal quotation marks omitted). And, under the FAA, an arbitration award may be vacated if the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). But "[w]e cannot vacate an arbitral award based on sheer speculation alone." Garcia-Velez, 725 F.3d at 33.

Alfonso leaves us to speculate. She does not explain what further information could have come to light during the proceedings that would have altered the Committee's award, and she points to nothing in the record that causes us to doubt the adequacy of her hearing.

-15-

III.

The district court's order confirming the arbitration award and the corresponding judgment against Alfonso are **AFFIRMED**.