# United States Court of Appeals
## For the First Circuit

No. 12-1519

DORAL FINANCIAL CORPORATION,

Plaintiff, Appellant,

v.

CALIXTO GARCÍA-VÉLEZ; CARMEN T. GARCÍA-VÉLEZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Roberto A. Cámara-Fuertes, with whom José L. Ramírez-Coll and Fiddler, González & Rodríguez, PSC, were on brief for appellant.
José Luis González-Castañer, with whom González Castañer, C.S.P., was on brief for appellees.

July 31, 2013

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Doral Financial Corp. ("Doral") filed this appeal after the district court denied its petition to vacate an arbitral award. According to Doral, the district court incorrectly rejected its contention that the arbitration tribunal engaged in misconduct by denying the issuance of pre-hearing and hearing subpoenas. Doral also argues that the district court erred in its determination that the tribunal had authority to order the payment of pre-award interest. After carefully considering the record, we affirm.

## I. Background

When Doral terminated Defendant-Appellee Calixto García-Vélez as the President of its Consumer Banking Division, García-Vélez began the arbitration proceedings underlying this appeal seeking the severance compensation that he felt was contractually due.[1] Doral opposed the filing and argued that García-Vélez's employment contract required no severance payment because the termination was "for cause." Shortly thereafter, García-Vélez accepted a top executive position at the Miami branch of a bank with whom Doral competed in Puerto Rico. He notified Doral by letter about his new employment, and Doral responded with an

---

[1] The employment contract had an arbitration clause whereby García-Vélez and Doral "agree[d] that any controversy or claim arising out of, or relating to this Agreement, or the breach thereof . . . shall be settled by confidential arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association." There is no dispute that this clause mandated the arbitration of García-Vélez's claims.

amendment to its submission to the arbitration tribunal, adding the claim that it owed no severance to García-Vélez because he had breached the non-competition clause of his employment contract. Doral also moved the tribunal for injunctive relief against García-Vélez and commenced parallel litigation in state court against his employer.[2]

The arbitration tribunal held a preliminary arbitration conference on March 23, 2009. It subsequently issued a scheduling order reflecting the agreements of the parties at the conference. As relevant here, the order established May 15, 2009, as the deadline for final requests for information, and August 7, 2009, for the submission of a final witness list. The order also stated that, "if a party wishes to issue a subpoena to a third party . . . the parties shall first confer and determine if there is any disagreement to the date and propriety of the subpoena. . . . Any dispute, as to a subpoena, shall be resolved by the Tribunal . . . ."

On September 4, 2009, five days before the first arbitration hearing was scheduled to begin, Doral filed an "Urgent Motion to Stay the Arbitration Proceedings," stating that the Miami branch of the bank for which García-Vélez allegedly worked had merged with its Puerto Rico holding company. According to Doral,

---

[2] Early into the arbitration, Doral voluntarily dismissed the claim for injunctive relief.

the merger proved the falsity of García-Vélez's contention that he exclusively worked for the Miami branch. The tribunal, however, denied the stay, and the arbitration hearings commenced as scheduled on September 9, 2009.

García-Vélez testified during the first days of the arbitration hearings. However, on September 14, 2009, due to a medical situation afflicting Doral's counsel, his testimony was interrupted and the hearings were postponed until December 14, 2009. Doral took advantage of the two-month recess to serve García-Vélez with a first set of interrogatories and a request for production of documents. Doral also notified García-Vélez's counsel that it intended to request pre-hearing third-party subpoenas from his employer. García-Vélez did not respond, and Doral filed a formal application with the tribunal to issue the pre-hearing subpoenas.[3]

García-Vélez immediately opposed the formal request. He argued that the subpoenas were untimely and that they sought to change the schedule agreed upon by the parties. García-Vélez also argued that the granting of the subpoenas would likely require the

---

[3] The subpoenas sought 41 discovery items, most of them as broad and open ended as the following three examples: (1) "A copy of any and all documents exchanged . . . [with] García-Vélez from the year 2004 to the present . . . ."; (2) "A copy of any and all documents analyzing the merger . . . ."; and (3) "A copy of any diagram, chart, flowchart, or organizational tree depicting the internal corporate structure of [the holding company] at present."

arbitration to be further delayed. The tribunal agreed with García-Vélez and denied Doral's requests as untimely.

Doral remained undeterred. On December 2, 2009, it filed an application for hearing subpoenas directed at García-Vélez's employer, seeking information and documents of the same nature as those sought through the pre-hearing subpoenas. Doral also moved the tribunal to reconsider its decision on the pre-hearing subpoenas, explaining that it had learned about García-Vélez's possible involvement with the merged Puerto Rico holding company well after the discovery deadline had lapsed.[4]

The tribunal denied the issuance of hearing subpoenas as well as Doral's reconsideration motion. As to the motion for reconsideration, it found "the subpoenas . . . significantly broader in scope than it would have permitted had the request been timely submitted and the deadline for requesting such subpoenas has long past." The tribunal held the same regarding the hearing subpoenas and added that Doral "could have/should have determined the witnesses it needed during the exchange of information process; and, it has had notice of the potential rebuttal witnesses it now wants to call since the September 10, 2009 [hearing]."

On December 11, 2009, the tribunal issued a written decision further explaining the reasoning behind its prior order.

_____

[4] Doral argued that García-Vélez misrepresented his relationship with the holding company as well as his professional responsibilities leading up to, and continuing after, the merger.

There, the tribunal addressed the alleged misrepresentations by García-Vélez, stating that "[t]he fact that [Doral] has maintained the same claim against [García-Vélez] for his employment with . . . the merged entity indicates that it should have requested the information it believed relevant to its claim during the Exchange of Information process." The tribunal further established that Doral "has been aware since the beginning of these proceedings of the witnesses that it is now attempting to subpoena related to its non-competition claim[, because,] [f]or an extended period of time[, Doral has] been engaged in collateral litigation with [García-Vélez's] employer concerning the non-competition provision in the Employment Agreement."

The arbitration hearings resumed on December 14, 2009, and Doral had the opportunity to cross-examine García-Vélez as well as to present evidence of its own. The tribunal then provided the parties with the opportunity to file post-hearing briefs and proposed awards.

The award was issued soon thereafter. In pertinent part, the tribunal found García-Vélez "entitled to be compensated pursuant to the terms of the Employment Agreement dealing with his termination without cause."[5] The tribunal also found that Doral had failed to "establish that Mr. García-Vélez breached the non-competition provision of the Employment Agreement" and held that he

_____

[5] Doral has not challenged this finding.

-6-

was entitled to pre-award interest pursuant to Rule 43(d) of the Commercial Arbitration Rules. The arbitral award totaled $2,396,609, including $163,008 in pre-award interest.[6]

In due course, Doral filed suit in the district court seeking vacatur of the award. It argued that the tribunal improperly denied the issuance of the subpoenas and thus engaged in "misconduct in refusing to hear evidence pertinent and material to the issue of Mr. García-Vélez'[s] violation of the non-compete clause of the Employment Agreement." Doral also posited that, "[b]y awarding pre-award interest, the [a]rbitrator[s] . . . exceeded [their] powers under the Employment Agreement and engaged in a manifest disregard of the law." In all, Doral charged the tribunal with "refus[ing] to hear material and pertinent evidence, manifest disregard of the law, manifest and gross misconduct . . . egregious failure to receive, evaluate and properly weigh the available evidence, and implausibl[y] reading . . . the Employment Agreement."

The district court denied the relief Doral sought in a thorough written decision. Doral's reconsideration motion was also denied, and this appeal timely ensued.

---

[6] Doral was also ordered to pay $33,000 in administrative fees and $201,462 in arbitrators' compensation.

## II. **Discussion**

We review <u>de novo</u> a district court's decision to vacate or confirm an arbitration award. <u>UMASS Mem. Med. Ctr., Inc.</u> v. <u>United Food & Commer. Workers Union, Local 1445</u>, 527 F.3d 1, 5 (1st Cir. 2008). Our review, however, honors the parties' decision "to have disputes settled by an arbitrator," <u>United Paperworkers Int'l Union</u> v. <u>Misco, Inc.</u>, 484 U.S. 29, 37-38 (1987), and recognizes that the arbitration process seeks to ameliorate the time and expenses generally associated with judicial proceedings, <u>Menorah Ins. Co., Ltd.</u> v. <u>INX Reinsurance Corp.</u>, 72 F.3d 218, 223 (1st Cir. 1995). <u>See also</u> <u>Gilmer</u> v. <u>Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 31 (1991) ("[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.") (quoting <u>Mitsubishi Motors Corp.</u> v. <u>Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985)) (internal quotations omitted). For those reasons, our <u>de novo</u> review in this area "is extremely narrow and exceedingly deferential," <u>Wheelabrator Envirotech Operating Servs. Inc.</u> v. <u>Mass. Laborers Dist. Council Local 1144</u>, 88 F.3d 40, 43 (1st Cir. 1996), so deferential indeed that we have stated that "[a]rbitral awards are nearly impervious to judicial oversight," <u>Teamsters Local Union No. 42</u> v. <u>Supervalu, Inc.</u>, 212 F.3d 59, 61 (1st Cir. 2000).

The limited scope of our review, however, "is not equivalent to granting limitless power to the arbitrator." Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir. 1988). "Although we do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts, there are limited exceptions to the general rule that arbitrators have the last word." Kashner Davison Sec. Corp. v. Mscisz, 531 F.3d 68, 74 (1st Cir. 2008) (internal quotations and citations omitted). One of those exceptions is encompassed in 9 U.S.C. § 10(a)(3). As relevant here, § 10(a)(3) requires vacatur of an award when "the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy . . . ."[7] Of course, § 10(a)(3) does not require arbitrators to consider every piece of relevant evidence presented to them. Hotels Condado Beach, La Concha and Convention Ctr. v. Unión De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985) ("Every failure of an arbitrator to hear relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award."). "Vacatur is appropriate only when the exclusion of relevant evidence so affects

[7] Although Doral has not provided us with authority for the proposition that a refusal to issue a subpoena qualify as a refusal to hear evidence for purposes of § 10(a)(3), we need not (and do not) decide this issue here, because Doral's contentions fail on other grounds.

the rights of a party that it may be said that he was deprived of a fair hearing." Id. (internal quotation and citation omitted).

Doral clings like a limpet in the heaviest sea to the "fair hearing" requirement subsumed in § 10(a)(3), urging us to find that the tribunal abridged it in refusing to issue the subpoenas. Doral claims that this refusal in turn prevented the introduction of relevant evidence regarding García-Vélez's potential breach of the non-compete clause. Doral's position is untenable for at least two reasons.

First, the record is devoid of evidence showing that Doral was not afforded a "fair hearing." The "fair hearing" requirement is rooted in due process concerns and thus calls for (1) notice, and (2) an opportunity to present relevant evidence and arguments. See Raytheon Co. v. Automated Bus. Sys., Inc., 882 F.2d 6, 8-9 (1st Cir. 1989).[8] Doral does not argue (nor could it) that the tribunal failed to provide adequate notice as to the schedule governing the arbitration proceedings. In fact, it is undisputed that the scheduling order the tribunal issued was agreed upon by the parties. Moreover, the record before us unequivocally shows that the tribunal granted Doral adequate notice in connection with the process governing the issuance of subpoenas. The scheduling order speaks for itself in this regard: "if a party wishes to issue

---

[8] Doral makes no claim under 9 U.S.C. § 10(a)(2) that there was any partiality in the arbitrators.

-10-

a subpoena to a third party . . . the parties shall first confer and determine if there is any disagreement to the date and propriety of the subpoena . . . Any dispute, as to a subpoena, shall be resolved by the Tribunal. . . ."

The tribunal also provided Doral ample opportunity to present its position regarding the subpoenas. In fact, the tribunal allowed Doral three opportunities at bat: (1) the application for pre-hearing subpoenas; (2) the application for hearing subpoenas; and (3) the motion to reconsider the pre-hearing subpoenas order. On all three occasions, Doral had the opportunity to argue why the subpoenas were warranted even though the deadline to request information had lapsed, the hearings were already underway, and García-Vélez had already testified at length.

The tribunal afforded Doral many other procedural safeguards, including the health-related two-month continuance its counsel obtained as well as the opportunity to (1) weigh in on the scheduling order governing the arbitration proceedings; (2) cross-examine García-Vélez; (3) introduce evidence of its own; and (4) file a post-hearing memorandum and a proposed award. Furthermore, the tribunal provided Doral with ample support, in written and unequivocal form, for its decision to deny the subpoenas and for its arbitration award, despite having no obligation to do so. See Zayas v. Bacardí Corp., 524 F.3d 65, 70 (1st Cir. 2008) ("Although arbitrators frequently elect to explain their decisions in written

-11-

opinions, they are under no cumpulsion to do so."). We are therefore not persuaded by Doral's arguments that the tribunal failed to satisfy the "fair hearing" exigencies behind § 10(a)(3).

Second, Doral's position is premised on unsupported and unwarranted factual assumptions. On this front, we note that even though Doral's proposed subpoenas requested a wide range of information from García-Vélez's employer, it is uncertain whether such information was available for production. But more importantly, even assuming that the information sought was accessible to Doral, there is nothing concrete in the record that would indicate that García-Vélez in fact violated the non-competition clause. In other words, all that Doral has to offer in support of its position on appeal is the hunch that the subpoenas would have potentially yielded relevant information for its case. We cannot vacate an arbitral award based on sheer speculation alone. See, e.g., Cytyc Corp. v. DEKA Prods. Ltd., 439 F.3d 27, 36 (1st Cir. 2006) (finding vacatur under § 10(a)(3) unwarranted because, among other things, movant failed to produce concrete evidence supporting its claim); cf. Hoteles Condado Beach, La Concha and Convention Ctr., 763 F.2d at 40 (vacating award under § 10(a)(3) upon a concrete showing that the evidence excluded "was both central and decisive" for the movant's case).

As it did in the district court, Doral places undue weight on the "misrepresentations" García-Vélez allegedly made

during the arbitration in connection with the merger of his employers. Doral presented the same argument to the arbitration tribunal. But the tribunal discarded it, reasoning, inter alia, that "[t]he fact that [Doral] has maintained the same claim against [García-Vélez] for his employment with . . . the merged entity indicates that it should have requested the information it believed relevant to its claim during the Exchange of Information process." We have no authority to second guess the tribunal's decision on this issue. See Asociación de Empleados del E.L.A. v. Unión Internacional de Trabajadores de la Industria de Automóviles, et al., 559 F.3d 44, 47 (1st Cir. 2009) ("We do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award."); see also Prudential-Bache Sec., Inc. v. Tanner, 72 F.3d 234, 240-41 (1st Cir. 1995) (declining to revisit arguments presented to, and rejected by, an arbitration tribunal); Dean v. Sullivan, 118 F.3d 1170, 1173 (7th Cir. 1997) (stating that courts have no authority to consider afresh arguments decided by an arbitration tribunal).[9]

In sum, Doral's contentions ring hollow. The record before us contains no evidence to support a finding that the

---

[9] Nor can we second guess, as Doral invites us to do, the arbitration tribunal's finding regarding the improper scope of Doral's subpoenas or the tribunal's understanding of the procedural exigencies set by its scheduling order. See Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 11 (1st Cir. 2001) ("[T]he arbitrator is free to set his own rules of procedure so long as he stays within the bounds of fundamental fairness.").

tribunal engaged in § 10(a)(3) misconduct.  On the contrary, the record presented to us shows that Doral lost the arbitration fairly and squarely, after the tribunal afforded it more than adequate process to present its side of the dispute.  Accordingly, we are in no position to grant the relief Doral requests under § 10(a)(3).

The same holds true for the relief Doral seeks in connection with the grant of pre-award interest.  As stated above, Doral argues that the tribunal exceeded its authority in awarding pre-award interest to García-Vélez and asks us to vacate that portion of the award. We cannot do so.  The record is uncontested that the parties agreed to arbitrate their dispute in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  In granting pre-award interest to García-Vélez, the tribunal explicitly referenced Rule 43(d)(1) of the Commercial Arbitration Rules, which, in pertinent part, establishes that "[t]he award of the arbitrator(s) may include . . . interest at such rate and from such date as the arbitrators(s) may deem appropriate."  The record contains no evidence that the parties limited the applicability of Rule 43(d)(1) in any way.  Therefore, Doral cannot now be heard to challenge the grant of pre-award interest on the ground that the tribunal lacked the very same authority that the parties explicitly granted to it by agreeing to arbitrate under the Commercial Arbitration Rules of the American

Arbitration Association.  To say more on this front would be to carry coals to Newcastle.

### III. <u>Conclusion</u>

For the foregoing reasons, the district court decision is affirmed.

**<u>Affirmed</u>**.