# United States Court of Appeals
## For the First Circuit

No. 14-1252

RAYMOND JAMES FINANCIAL SERVICES, INC.,

Petitioner, Appellee,

v.

ROBERT MICHAEL FENYK,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Lipez, and Barron,
Circuit Judges.

Norman E. Watts, with whom Watts Law Firm, PC was on brief, for appellant.
Sandra D. Grannum, with whom Davidson & Grannum, LLP, Peter J. Pingitore, and Pingitore & Fitzpatrick, LLC were on brief, for appellee.

March 11, 2015

**LIPEZ, Circuit Judge**.  An arbitration panel awarded appellant Robert Fenyk $600,000 in back pay based on a claim that he was unlawfully terminated from his job as a stock broker because he is an alcoholic.  The district court vacated the award, concluding that the arbitrators lacked authority to grant that remedy because Fenyk brought no claims under the state law the arbitrators applied.  Fenyk now seeks reinstatement of the award, arguing that the district court failed to give due deference to the arbitrators' ruling.

We reverse the district court's judgment.  Although the arbitration decision may have been incorrect as a matter of law, it was not beyond the scope of the panel's authority.

**I.**

**A. Factual Background**

Appellant Fenyk was associated with appellee Raymond James Financial Services ("RJFS") as a securities broker for more than seven years, first in New York City and then, beginning in October 2004, in Vermont.  Fenyk managed his own small branch office in Vermont and was designated an independent contractor for RJFS under his agreement with the company.  RJFS is based in Florida, and the "Independent Sales Associate Agreement" that Fenyk signed contained a provision stating that Florida law would govern disputes between the parties.  Fenyk also signed RJFS's Business

-2-

Ethics Policy, in which he agreed to arbitrate any conflicts "arising out of the independent contractor relationship."

In May 2009, during a routine check of Fenyk's customer communications, an RJFS reviewer noticed an email to a client, Fenyk's former domestic partner, suggesting that Fenyk had an alcohol problem. The email began with information about the client's account, but went on to note Fenyk's "slip" and his "need [for] meetings and real sobriety for a dialoug [sic] with you." The email also reported that Fenyk's "new AA friend was very hard on [him] last night."

The reviewer alerted Fenyk's RJFS supervisors in Florida to the email. On May 27, Thomas Harrington, regional director for the Northeast, and John Tholen, the assistant regional director, called Fenyk and told him they were no longer comfortable supervising him from afar and his contract would be terminated in thirty days.[1] Harrington testified that he decided to terminate Fenyk's affiliation with RJFS as a result of the email because he was concerned about Fenyk's "ongoing sobriety" and the possibility that he was transacting business with clients while he had "an alcohol problem." Although Fenyk's employment with RJFS initially was extended beyond the thirty days so he could arrange a sale of

_____

[1] The Sales Associate Agreement provided that it could be terminated with five business days' notice, in writing, from either party.

his client "book" to another RJFS broker, the relationship ended on July 1, 2009, after Fenyk decided not to proceed with that sale.

Approximately two years later, in June 2011, Fenyk filed a complaint in Vermont state court alleging that he had been fired on account of his sexual orientation and his status as a recovering alcoholic, in violation of Vermont's Fair Employment Practices Act ("VFEPA"), Vt. Stat. Ann. tit. 21, § 495. Once alerted by RJFS of his obligation to arbitrate employment disputes, Fenyk dismissed the complaint and brought an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"). His FINRA Statement of Claim reiterated the same two causes of action asserted in his court complaint: retaliation based on sexual orientation and disability, in violation of Vermont law. Fenyk sought $665,000 in back pay, $588,000 in front pay, and $250,000 in punitive damages, along with attorney's fees and costs.

In addition to denying the allegations of discriminatory action, RJFS responded to Fenyk's filing by asserting that Vermont law did not apply to the parties' relationship, and thus the Vermont claims necessarily failed; that Fenyk was an independent contractor, not an employee, and was therefore not protected by either Florida's or Vermont's employment discrimination law; and that his claims were time-barred.

A hearing was held before a panel of three arbitrators in January 2013. On the opening day, Fenyk asked to amend his

complaint to add a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117, noting that the federal law "mirrors" the Vermont and Florida employment discrimination statutes and that, hence, there would be no prejudice to the defense. Counsel for RJFS objected to the proposed amendment as untimely, stating that she had "responded to the claims that have been proffered." She further noted that Fenyk had not, in fact, alleged discrimination per se, but had only asserted claims for retaliation. Fenyk did not at that time propose to add claims under Florida law.

The panel proceeded without deciding whether to accept Fenyk's proposed amendment and, following the four-day hearing, Fenyk again moved to amend his Statement of Claim, this time seeking to add disability discrimination claims under federal, New York, and Florida law.[2] He argued that the statutes and the elements of the claims "are essentially the same[,] as are the interpretive judicial decisions," though he noted that damage awards are handled differently under the various provisions.

On the same day he filed his renewed motion to amend, Fenyk also filed a post-hearing brief, in which he noted that he originally had asserted claims under Vermont law but had since moved "to add claims for violations of other relevant jurisdictions." He repeated his assertion that the state statutes

---

[2] By this time, Fenyk's focus was solely on his disability-based cause of action, as he withdrew his claim based on sexual orientation at the conclusion of the hearing.

are similar to each other and to federal law, "forbid[ding] employers from engaging in discriminatory practices against their employees," again acknowledging that the statutory remedies differed. He urged the panel, inter alia, to grant his motion to amend his Statement of Claim to add claims under federal, New York and Florida law.

In its post-hearing brief, RJFS pressed the panel to reject Fenyk's proposed amendment.[3] The company argued, inter alia, that Fenyk had violated FINRA rules by making the motion outside the prescribed time period, RJFS would be prejudiced by the belated amendment, and the proposed ADA claim should in any event be rejected as time-barred. RJFS acknowledged that Florida employment discrimination law "substantially" differs from Vermont law only in its treatment of sexual orientation, and asserted that, even under Vermont's choice-of-law principles, Florida law would apply.

## B. Arbitration Ruling

In March 2013, the arbitration panel denied Fenyk's motion to amend his Statement of Claim, finding that the request was untimely and there were "no special circumstances alleged to justify such relief." At the same time, however, the panel granted

---

[3] RJFS addressed only Fenyk's request made at the hearing to add an ADA claim, as Fenyk's written motion also seeking to add claims under New York and Florida law was submitted on the same date as RJFS's post-hearing brief.

what it described as a request from both parties that Florida law be applied to the proceedings.[4]  The panel subsequently refused to reconsider its denial of Fenyk's motion to amend.

The arbitrators announced their ruling on the merits in late April 2013, issuing only a brief statement of their conclusions.  See Zayas v. Bacardi Corp., 524 F.3d 65, 70 (1st Cir. 2008) ("Although arbitrators frequently elect to explain their decisions in written opinions, they are under no compulsion to do so.").  We reproduce here the complete "Award" section of their decision.

> After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1.  Respondent is liable for and shall pay to Claimant compensatory damages in the amount of $600,000.00 for back pay on his claim of discrimination based on disability.
>
> 2.  Respondent is liable for and shall pay to Claimant attorneys' fees in the amount of $33,627.50 plus litigation expenses in the amount of $2,414.53 pursuant to paragraph 22(b) of the contract between the parties and §760.11(5) of the Florida Civil Rights Act.

---

[4] Although the record does not show that Fenyk expressly asked that Florida law be applied to the dispute, the panel reasonably inferred such a request.  Not only did Fenyk seek to add a discrimination claim under Florida law, but he also observed at the close of the arbitration hearing that Florida law "probably" will apply and, in his post-hearing brief, suggested that Florida or New York law would apply depending upon where the employment contract was signed.  On appeal, Fenyk states that both parties agree that Florida law governs their dispute.

3. Any other relief sought under Claimant's claims of statutory discrimination [] is denied.

4. Any and all relief not specifically addressed herein, including punitive damages, is denied.

The panel also assessed RJFS roughly $20,000 in arbitration fees.

## C. District Court Ruling

RJFS moved in federal court to vacate the arbitration award on the ground that the arbitrators had exceeded their powers by, inter alia, awarding damages on a claim -- violation of the Florida Civil Rights Act ("FCRA") -- "that Fenyk never submitted to them for their review." Verified Petition to Vacate an Arbitration Award, at 6. The district court agreed with RJFS that the award was unsupportable. The court noted that the arbitration panel had determined that Florida law applied, but nonetheless had ignored Florida's one-year statute of limitations for civil rights claims "and somehow construed Florida law to find a violation of a Vermont statute -- a statute which, given the governing law, was wholly inapplicable to the case." The court then concluded:

Awarding damages to a plaintiff who has pled no claims under the applicable law plainly transgressed the limits of the arbitrators' power. For this reason, the award must be vacated.

This appeal by Fenyk followed. He argues that the district court erred in construing the Florida statute of limitations to bar his claim and improperly failed to defer to the

-8-

arbitrators' "good faith effort" to resolve the dispute. In response, RJFS reiterates the two primary flaws it has consistently identified in the arbitration decision: (1) the panel awarded damages despite its finding that Florida law applied and Fenyk brought no claims under Florida law; and (2) even assuming Fenyk's claims may be analyzed as alleged violations of Florida law, such claims fail as time-barred under the one-year statute of limitations for initiating a complaint under Florida's anti-discrimination law.

## II.

### A. Legal Principles

A district court's decision to vacate or confirm an arbitration award is subject to plenary review. Doral Fin. Corp. v. García-Veléz, 725 F.3d 27, 31 (1st Cir. 2013). However, our evaluation of an arbitrator's ruling "is extremely narrow and exceedingly deferential," id. (quoting Wheelabrator Envirotech Operating Servs., Inc. v. Mass. Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996)), and is indeed "among the narrowest known in the law," Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps., 873 F.2d 425, 428 (1st Cir. 1989). To obtain vacatur of an arbitration award, "[i]t is not enough for [a party] to show that the panel committed an error -- or even a serious error." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010); see also N. New England Tel. Operations LLC v. Local 2327, 735 F.3d

15, 20-21 (1st Cir. 2013) ("[C]ourts [] do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does reviewing decisions of lower courts." (second alteration in original) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987))).

Rather, an arbitration ruling ordinarily is unenforceable only if it imposes the arbitrators' "own view of sound policy" instead of adhering to the agreement that governs the parties' relationship. Stolt-Nielsen, 559 U.S. at 672; id. at 671 (noting that arbitration rulings are vulnerable when the arbitrator "strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice" (alteration in original) (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam) (internal quotation marks omitted)); see also Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013) (stating that "courts may vacate an arbitrator's decision 'only in very unusual circumstances'" (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995)).

As we previously have noted, however, "[t]he limited scope of our review . . . is not equivalent to granting limitless power to the arbitrator." Doral Fin. Corp., 725 F.3d at 31 (internal quotation marks omitted); see also Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 74 (1st Cir. 2008) ("An arbitration

-10-

award . . . is not utterly impregnable." (internal quotation marks omitted)). The Federal Arbitration Act ("FAA") specifies a number of grounds that would support an order vacating an award, including fraud, bias, and prejudicial misbehavior. See 9 U.S.C. § 10(a)(1), (2), (3). Perhaps the most common basis -- and the rationale invoked by the district court in this case -- is "where the arbitrators exceeded their powers." Id. § 10(a)(4); see, e.g., Oxford Health Plans LLC, 133 S. Ct. at 2068; Stolt-Nielsen, 559 U.S. at 669-70; Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 239-40 (1st Cir. 2006).

Some courts, including our own, have held that arbitration awards also may be vacated if they are in "manifest disregard of the law," a ground not explicitly included in § 10. Bangor Gas Co. v. H.Q. Energy Servs. (U.S.) Inc., 695 F.3d 181, 187 (1st Cir. 2012) (internal quotation marks omitted). We have invoked that standard primarily for cases where the award contradicted unambiguous contract language or "the arbitrator recognized the applicable law, but ignored it." Id. (quoting Gupta v. Cisco Sys., Inc., 274 F.3d 1, 3 (1st Cir. 2001)); see also Stolt-Nielsen, 559 U.S. at 672 n.3 (noting party's description of the standard as "requiring a showing that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless

willfully flouted the governing law by refusing to apply it" (alteration in original) (internal quotation marks omitted)).

Whether the manifest-disregard doctrine remains good law, however, is uncertain.  A circuit split has developed following the Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008), which held that § 10 of the FAA provides the exclusive grounds under the statute for vacatur of arbitration awards.  See Bangor Gas Co., 695 F.3d at 187 & n.3 (listing cases).  Although we concluded, in dicta, that the doctrine is no longer available, id. (citing Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n.3 (1st Cir. 2008)), we have "not squarely determined whether our manifest disregard case law can be reconciled with Hall Street," Kashner Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 22 (1st Cir. 2010).  See Stolt-Nielsen, 559 U.S. at 672 n.3 (refraining from deciding whether "manifest disregard" survived Hall Street "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10").

We need not resolve the uncertainty over "manifest disregard" here.  As we explain below, even assuming the doctrine remains available, it would not invalidate the award in this case.

**B. Whether the Award Exceeds the Arbitrators' Authority**

The district court identified two problems with the arbitration panel's decision: (1) its disregard of Florida's

-12-

statute of limitations, and (2) the award of damages despite Fenyk's failure to bring any claims under Florida law -- the law that everyone now agrees governs his dispute with RJFS.   We consider each issue in turn.

### 1.  Statute of Limitations

RJFS argues that Fenyk's claims, brought two years after his contract was terminated, were barred by Florida's statute of limitations for civil rights actions.[5]  The company asserts that Fenyk alleged claims under Vermont law -- which has a longer limitations period[6] -- in an attempt to circumvent the Florida time-bar.  That attempt necessarily fails, the company maintains, because Florida law governs the controversy.

Given the arbitration panel's determination that Florida law applies to Fenyk's claims, we agree that Florida's statute of limitations governs.  That judgment does not help RJFS.  At the time of the arbitration panel's decision, Florida law on the

------

[5] The FCRA provides that an administrative complaint must be filed within 365 days of the alleged violation, see Fla. Stat. § 760.11(1), and imposes various deadlines for filing a "civil action," one of which provides that an action must be commenced no later than one year after the administrative agency finds reasonable cause to believe that an unlawful discriminatory practice has occurred, id. §§ 760.11(4), (5).

[6] Both the VFEPA and the FINRA Code of Arbitration Procedure for Industry Disputes have six-year limitations periods. See Vt. Stat. Ann. tit. 12, § 511; Egri v. U.S. Airways, Inc., 804 A.2d 766, 770 (Vt. 2002); FINRA Rule 13206(a).  The FINRA Code, however, states that its rule on time limits "does not extend applicable statutes of limitations."  Rule 13206(c).

applicability of statutory limitations periods to arbitrations was evolving.  Two weeks <u>after</u> the panel's April 2013 ruling in this case, the Florida Supreme Court held that a general statute of limitations provision applicable to most state law civil actions also applies to arbitration proceedings.  See <u>Raymond James Fin. Servs., Inc.</u> v. <u>Phillips</u>, 126 So. 3d 186, 188 (Fla. 2013) (issued May 16, 2013, and revised Nov. 7, 2013).  The high court's ruling came in response to a certified question from an intermediate appellate court, which had held that the provision at issue -- Florida Statutes § 95.011 -- governs arbitrations only if the parties' arbitration agreement expressly incorporates a statutory filing deadline.  See <u>Raymond James Fin. Servs., Inc.</u> v. <u>Phillips</u>, 110 So. 3d 908, 914 (Fla. Dist. Ct. App. 2011) (per curiam).  In reversing the lower court, the Florida Supreme Court concluded that arbitrations are subject to § 95.011 because the statute defines an "action" to encompass "proceedings," thereby including arbitration proceedings within its scope.  See <u>Phillips</u>, 126 So. 3d at 193.[7]

_____

[7] Section 95.011 states:

> A civil action or proceeding, called "action" in this chapter, including one brought by the state, a public officer, a political subdivision of the state, a municipality, a public corporation or body corporate, or any agency or officer of any of them, or any other governmental authority, shall be barred unless begun within the time prescribed in this chapter or, if a different time is prescribed elsewhere in these statutes, within the time prescribed elsewhere.

Section 95.011 thus does not itself set a specific limitations

Here, the parties debate whether the holding in <u>Phillips</u> extends to claims brought under the FCRA, Fla. Stat. Ann. §§ 760.01-760.11.[8]  However, whether the decision in fact applies to employment discrimination cases such as the one before us does not matter.  Given the legal uncertainty reflected in the certified question presented to the Florida Supreme Court, and the fact that even "serious error" by arbitrators will not invalidate their award, any error by the panel in refusing to dismiss Fenyk's claims as untimely does not rise to the level necessary to justify vacatur.  <u>Stolt-Nielsen</u>, 559 U.S. at 671.

## 2. The Absence of Claims under Florida Law

The panel's award of damages based on Florida law, despite its denial of Fenyk's request to amend his Statement of Claim to include a claim under the FCRA, troubled the district court.  We understand its discomfort.  Yet we cannot conclude, in

---

period, but applies generally to bar "civil action[s] or proceeding[s]" commenced outside of particular statutory limits.

[8] Unlike § 95.011, § 760.11 does not expressly equate "proceedings" and "actions."  Nor is it a general limitations provision.  Rather, it sets out a detailed scheme of administrative and court procedures available to individuals claiming civil rights violations.  <u>See</u>, <u>e.g.</u>, Fla. Stat. Ann. § 760.11(1) (stating that "[a]ny person aggrieved by a violation of [the Act] may file a complaint with the commission within 365 days of the alleged violation"); <u>id.</u> § 760.11(7) ("In the event the final order issued by the commission determines that a violation of the Florida Civil Rights Act of 1992 has occurred, the aggrieved person may bring, within 1 year of the date of the final order, a civil action . . . .").

the particular circumstances of this case, that the arbitrators' decision to impose liability on RJFS under Florida law "willfully flouted the governing law" or otherwise exceeded the bounds of the arbitrators' authority to resolve the parties' dispute. Stolt-Nielsen, 559 U.S. at 672 n.3 (internal quotation marks omitted). The reliance on Florida law would be a different matter if the pertinent statutes in Florida and Vermont materially diverged. RJFS acknowledged in its post-hearing brief, however, that the two states' anti-discrimination laws are substantially equivalent in covering disability discrimination. See Johnson v. Great Expressions Dental Ctrs. of Fla., P.A., 132 So. 3d 1174, 1176 (Fla. Dist. Ct. App. 2014) (noting that "the FCRA is patterned after Title VII of the federal Civil Rights Act of 1964" and that "we look to federal case law as well as Florida decisions to interpret the statute"); Payne v. U.S. Airways, Inc., 987 A.2d 944, 948 (Vt. 2009) (stating that "the VFEPA, which is patterned on Title VII of the federal Civil Rights Act protecting against employment discrimination . . . , is often guided by the federal courts' interpretations of Title VII"). Moreover, not knowing how the arbitrators would treat Fenyk's inappropriate Vermont claims, the company prudently explained in its pre-hearing brief the reasons why it believed Fenyk's claims failed under both Florida and Vermont law. RJFS also noted in that filing the similarities between the two laws and their mutual reliance on federal

-16-

precedents.  See, e.g., RJFS Pre-Hearing Brief at 14 ("We may therefore look to federal caselaw for the appropriate standards and burdens to establish a discrimination claim under either Vermont or Florida law.").

To the extent there are differences in the two states' laws, the arbitrators' decision to apply Florida law -- the approach RJFS has demanded throughout the proceedings -- protects the company from obligations at odds with those encompassed by the arbitral agreement.  See RJFS Post-Hearing Brief at 13 ("The justified expectations of the parties were that the relationship would be governed under Florida law.").  Although a shorter statute of limitations in Florida was a potentially crucial difference from Vermont law that favored RJFS, the panel applied the law that RJFS insisted be used and still made a determination adverse to the company.  We already have explained why we may not dislodge that determination.[9]  Briefly stated, the arbitrators were empowered to resolve claims of employment discrimination against RJFS under Florida law, and that is what they did.  Cf. Kashner Davidson, 531 F.3d at 77 (citing George Watts & Son, Inc. v. Tiffany and Co., 248

_____

[9] Given the high hurdle for finding reversible error by the arbitrators, we also cannot disturb two other implicit subsidiary judgments criticized by RJFS: (1) treating Fenyk as an employee protected by the Florida statute rather than as an independent contractor, and (2) concluding that he adequately alleged a cause of action for disability discrimination related to his termination, despite framing his claims in terms of retaliation.  Indeed, RJFS does not argue on appeal that the arbitration award is unsustainable because of either of those asserted errors.

F.3d 577 (7th Cir. 2001), parenthetically noting the court's hypothesis that an arbitration award based on state law different from the state law specified in an arbitration agreement "could be deemed a 'manifest disregard of the law' or, alternatively, as exceeding the arbitrator's powers").

One might reasonably argue that the panel's decision to grant Fenyk a remedy under Florida law is incompatible with its denial of Fenyk's request to amend his arbitration complaint to include claims under the FCRA and, for that reason, was improper. In effect, the panel did what it told Fenyk it would not do: view his allegations of discrimination through the lens of Florida statutory law. Though the panel's unexplained reliance on the FCRA leaves us perplexed, and may have been erroneous, it does not render the award unsustainable. Importantly, the panel had the authority to allow the addition of Florida claims. See FINRA Rule 13309(b) (stating panel's authority to grant a motion to amend). As the principles governing arbitration awards recited above make clear, the question before us is not whether the arbitrators made the correct decision when they gave Fenyk a remedy under Florida law, but whether their decision was authorized by the parties' agreement. In the final analysis, the panel apparently decided that Fenyk's mistake in labeling his claims did not justify denying him relief. Where the arbitrators applied the substantive law that RJFS agreed would govern its conduct, that choice to apply Florida

law falls within the category of judgments -- even if erroneous -- that we may not disturb.

### III.

In opting for arbitration as its preferred mechanism for resolving employment disputes, RJFS "trade[d] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Doral Fin. Corp., 725 F.3d at 31 (parenthetically quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991)). Barring exceptions inapplicable here, our limited review of arbitral decisions requires us to uphold an award, regardless of its legal or factual correctness, if it "'draw[s] its essence from the contract' that underlies the arbitration proceeding." Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006) (quoting Misco, 484 U.S. at 38). For the reasons we have explained, the panel's ruling satisfies that standard.

Accordingly, we reverse the decision of the district court and remand the case for entry of an order confirming the arbitration award.

So ordered.