# United States Court of Appeals
## For the First Circuit

No. 19-1819

KENNETH EBBE,

Petitioner, Appellant,

v.

CONCORDE INVESTMENT SERVICES, LLC,

Respondent, Appellee,

WESTMINSTER FINANCIAL SERVICES, INC.;
WESTMINSTER FINANCIAL ADVISORY CORPORATION;
RICHARD G. CODY; JILL M. TRAMONTANO f/k/a Jill M. Cody,

Respondents.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

---

John A. Mangones, with whom Godbout Law PLLC was on brief,
for appellant.
Shane Haselbarth, with whom Gerard J. Kowalski and Marshall
Dennehey Warner Coleman & Goggin were on brief, for appellee.

---

March 24, 2020

---

LYNCH, **Circuit Judge**.  The question presented is whether the district court erred in confirming, and denying appellant's motion to vacate, a Financial Industry Regulatory Authority ("FINRA") arbitral award which denied certain claims against Concorde Investment Services, LLC ("Concorde").  For different reasons than those used by the district court, we agree that confirmation was required, and affirm.

I.

We briefly outline the facts as presented to the arbitrators and describe their award.  The arbitrators did not state their reasons for the award, nor did they need to do so. See United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation . . . to give their reasons for an award."); Lanza v. FINRA, Nos. 18-2057, 18-2181, slip op. at 4-5, 12 n.6 (1st Cir. Mar. 24, 2020) (noting that FINRA Code Rule 12904(g) requires an explained decision only upon the joint request of all parties to the arbitration); Zayas v. Bacardi Corp., 524 F.3d 65, 70 (1st Cir. 2008) ("Although arbitrators frequently elect to explain their decisions in written opinions, they are under no compulsion to do so.").

The claims asserted against Concorde in the FINRA Dispute Resolution Statement of Claim were for negligence, breach of fiduciary duty, violations of FINRA suitability rules and regulations against deceptive securities practices, and failure to

properly supervise under the Federal Control Person Statute (section 20 of the Securities Exchange Act of 1934) and the Massachusetts Control Persons Statute, Mass. Gen. Laws ch. 110A, § 410.

Ebbe worked for Verizon and its predecessors from 1969 to 2002. At the time of his retirement from Verizon, he cashed out the entirety of his pension and 401(k), a total of $498,000. Ebbe decided to invest the money with Richard Cody, who then worked at Leerink Swann. Richard Cody took Ebbe's account with him as he moved to GunnAllen Financial in 2005 and later to Westminster Financial ("Westminster")[1] in 2010. Ebbe began receiving monthly distributions from the account after it was opened.

Ebbe and Richard Cody met approximately three times a year to discuss Ebbe's investments. At these meetings, and during phone calls between the two, Richard Cody told Ebbe that the distributions from his account were from the interest only and that the account's balance remained around $500,000. In reality, the distributions steadily depleted the account's principal. When Richard Cody transferred the account to Westminster in March 2010, its balance had fallen to $144,240.23.

---

[1] Both Westminster Financial Services, Inc. and Westminster Financial Advisory Corporation were parties to Ebbe's FINRA claim. Neither is party to this appeal, and we refer to both as Westminster.

In 2009, unbeknownst to Ebbe at the time, FINRA's Appeals Panel suspended Richard Cody for a year for recommending unsuitable investments and in-and-out trading, a sanction affirmed by the Securities and Exchange Commission and later by this court. See Cody v. SEC, 693 F.3d 251, 254-57 (1st Cir. 2012). When the suspension began in January 2013, Richard Cody was no longer allowed to serve as Ebbe's advisor, so he transferred the account from Westminster to Concorde, where his wife, Jill Cody, was a new investment advisor. At that point, the account's balance was $59,175.79. In January 2015, its balance was $873. Concorde sent Ebbe monthly statements, starting in January 2013, that showed Jill Cody as his registered representative.

Despite his suspension, Richard Cody continued to meet with Ebbe to discuss his investments, and Ebbe testified he was unaware that Jill Cody had taken over his account when it moved to Concorde, despite receiving the statements.

Richard Cody joined Concorde in February 2014 after his suspension ended. But Jill Cody remained listed as Ebbe's advisor for the duration of the time his account was at Concorde. The account statements never listed Richard Cody as Ebbe's representative.

During the entire time Ebbe's account was at Concorde, Ebbe received monthly statements from Concorde that accurately reflected his declining account balance and the substantial

- 4 -

diminution of its principal. Ebbe discussed this diminution several times with Richard Cody, and Cody always told him that the statements did not include all of Ebbe's investments. Ebbe testified he did not understand the monthly statements and that he believed Richard Cody's assurances. Ebbe never contacted Jill Cody, his listed account representative at all, including for explanation. Concorde closed Ebbe's account in May 2016, at which point it had a zero balance.

In July 2016, after Concorde learned that Richard Cody had contacted customers during the period of his suspension, Concorde terminated both Richard Cody and Jill Cody.

On September 23, 2016, Ebbe received a deposit in his bank account in the same amount as his normal monthly distribution had been from Concorde. Ebbe noticed that the payment originated from an atypical routing number. Cody had arranged this payment from his individual account. For the first time, Ebbe then contacted Concorde directly. Ebbe testified that was the first time he learned that his Concorde account had no value.

On August 1, 2017, Ebbe filed for arbitration with FINRA against Richard Cody, Jill Cody, Westminster, Concorde, and three other Concorde supervisory employees. FINRA served the statement of claim on Richard Cody and Jill Cody, but neither answered or appeared. The arbitration began on October 16, 2018, and lasted four full days.

Ebbe's expert, Patrick McKeon, testified at the arbitration only as to defalcations by Richard Cody, not as to any by Jill Cody. As to Concorde, McKeon said its duty was to do "reasonable" supervision of its registered representatives. He also did not flatly opine that Concorde had violated a duty as to such supervision. He admitted there was no evidence that Jill Cody ever made any misrepresentations to Ebbe.

The panel heard from Concorde's Chief Compliance Officer that Concorde had hired Jill Cody after a careful check revealed no red flags, had met its duty to supervise her, had conducted surprise investigations of Jill Cody, and had found no problems.

Concorde also presented a separate expert who testified at the hearing that Concorde had complied with all industry rules and regulations including about supervision of each of the Codys. And the arbitral panel had reason to doubt the credibility of Ebbe, who admitted to tax fraud.

The arbitral award stated:

After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents Richard Grant Cody and Jill M. Cody are jointly and severally liable for and shall pay to [Ebbe] the sum of $286,096.00 in compensatory damages.

2. [Ebbe's] claims against Concorde [and Westminster] are denied.

- 6 -

3.   [Ebbe's] request for attorneys' fees is denied.

4.   [Ebbe's] request for punitive damages is denied.

5.   Any and all claims for relief not specifically addressed herein are denied.

The panel did not award Ebbe his full requested damages figure of over $800,000.

On February 14, 2019, Ebbe filed a motion in the Massachusetts federal district court to vacate in part and confirm in part the award. On May 3, 2019, Westminster and Concorde filed motions to confirm the award as to them. On July 18, 2019, the district court denied Ebbe's motion to vacate and granted the motions to confirm. Ebbe v. Concorde Inv. Servs., LLC, 392 F. Supp. 3d 228, 242 (D. Mass. 2019).

Ebbe timely appealed.

II.

In an action to vacate or confirm an arbitral award, "we review the district court's decision de novo, mindful 'that the district court's review of arbitral awards must be extremely narrow and exceedingly deferential.'" UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008) (quoting Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000)).

We have no need to decide whether, as Ebbe asserts, in the aftermath of Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 584-85 (2008), arbitral awards may be vacated under the doctrine of "manifest disregard of the law." See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 13 n.13 (1st Cir. 2019) (declining to decide whether manifest disregard remains viable where that standard was not met). The manifest disregard standard allows courts to reject an award that "is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc., 863 F.3d 90, 95 (1st Cir. 2017) (quoting McCarthy v. Citigroup Glob. Mkts., Inc., 463 F.3d 87, 91 (1st Cir. 2006)). Where arbitrators have not explained their award, as they need not, a party challenging the award "is hard pressed to satisfy the exacting criteria for invocation of the doctrine." Advest, Inc. v. McCarthy, 914 F.2d 6, 10 (1st Cir. 1990). As in Mountain Valley Property, we assume dubitante such a manifest disregard standard may be used. 863 F.3d at 95. Even so, no manifest disregard has been shown, and certainly none of the three factors specified above have been shown.

We view the panel's determination as to Concorde as based on its assessment of the facts, and such factual determinations

are unassailable on a motion to vacate.  See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 510 (2001) (per curiam). On manifest disregard review, even "a court's conviction that the arbitrator made a serious mistake or committed grievous error will not furnish a satisfactory basis for undoing the decision." Advest, 914 F.2d at 9.

On the facts here, the arbitrators' conclusion was reasonable in light of the claims made and the evidence presented. Ebbe has not nearly come close to showing the arbitrators engaged in a manifest disregard of the law.  There is no showing that "the arbitrator recognized the applicable law, but ignored it." Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 64 (1st Cir. 2015) (quoting Bangor Gas Co. v. H.Q. Energy Servs. (U.S.) Inc., 695 F.3d 181, 187 (1st Cir. 2012)).  Nor has Ebbe come close to meeting any of the statutory bases for vacating awards set forth in the Federal Arbitration Act.

Ebbe's principal argument that there was manifest disregard appears to be that since Jill Cody, employed by Concorde, was found jointly and severally liable with her husband, this means that Concorde must necessarily be liable "under the doctrine of respondeat superior for the misconduct of its agent Jill Cody." This argument fails.

The first reason is that neither of the Codys appeared for arbitration, and the judgment of the arbitrators was entered

- 9 -

while they were in default. The panel's finding of liability against the Codys could reasonably have been nothing more than entry of a default judgment. Further, Ebbe produced no evidence of misconduct, including any violations of company rules, by Jill Cody while she was his representative. The panel's reasons for not awarding the measure of damages Ebbe requested could well reflect rejection of some of Ebbe's claims, including that any liability on the Codys' part should be attributed to Concorde.

Further, under Massachusetts law, respondeat superior only allows "an employer . . . [to] be held vicariously liable for the torts of its employee . . . committed within the scope of employment." Lev v. Beverly Enters.-Mass., Inc., 929 N.E.2d 303, 308 (Mass. 2010) (quoting Dias v. Brigham Med. Assocs., Inc., 780 N.E.2d 447, 449 (Mass. 2002)). The arbitral panel could have concluded that, if the Codys had any liability, it was not tort liability and it did not arise from any acts they took within the scope of any employment by Concorde. For example, the panel plausibly could have concluded that the acts were not "motivated, at least in part, by a purpose to serve" Concorde. Id. (quoting Mosko v. Raytheon Co., 622 N.E.2d 1066, 1068 (Mass. 1993)). As to Jill Cody, the lack of evidence of either specific tortious conduct or any misconduct could have led the arbitrators to conclude that Concorde was not vicariously liable.

Further, the expert testimony before the arbitrators was that Concorde had met all of its obligations imposed on it by the securities laws, and Ebbe failed to put in any contrary evidence. Concorde provided Ebbe with accurate monthly statements of his account from the date of its opening and throughout. It further took measures to oversee the performance of Jill Cody, Ebbe's listed representative, by investigating her background, contacting her former employer, requesting a written explanation of her approach to managing her portfolios, and performing a surprise inspection of her branch. These factors alone suffice to make plausible that Concorde violated no duties it owed Ebbe. On these facts, the panel could have concluded that Concorde was not liable to Ebbe either on a respondeat superior theory or for failure to supervise. Beyond that, given Ebbe's own role in subjecting himself to the harm the Codys imposed on him, it was rational for the arbitrators to conclude that no finding of liability against Concorde was warranted.

Ebbe's fallback position is his request that the matter should be remanded to the arbitrators for a specific finding as to respondeat superior. That argument also fails. That issue has been waived many times over. No such request for relief was made to the district court, and so it is waived. See Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 52 (1st Cir. 2019).

Affirmed. Costs are awarded to Concorde.